| | | |
|---|---|---|
| REESA D. WALSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-547 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Doc. 16 & 17] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 18 & 19]. Plaintiff Reesa D. Walsh seeks judicial review of the

decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn

W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Title II and Title XVIII application on June 28, 2010. [Tr. 188-89]. The

Social Security Administration denied Plaintiff's application initially and upon reconsideration.

[Tr. 80-85; 92-97]. Plaintiff timely filed a request for a hearing, and she appeared before

Administrative Law Judge, Ronald Feibus, on October 27, 2011 in Chattanooga, Tennessee. [Tr.

50-75]. The ALJ held a supplemental hearing on May 17, 2012 to hear testimony from Dr.

Rebecca Sweeney and Dr. J. Flynn. [Tr. 31-49]. The ALJ issued an unfavorable decision on

June 29, 2012. [Tr. 10-30]. Plaintiff filed her appeal of the decision, which the Appeals Council

declined to review on July 18, 2013.  [Tr. 8-9; 3-7].

Having exhausted her administrative remedies, Plaintiff filed a complaint with this Court on September 14, 2013, seeking judicial review of the Commissioner's final decision under 42 U.S.C.A. § 405(g).  [Doc. 2].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since February 4, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
>
> 3. The claimant has the following severe impairments: with a History of Unspecified Chest Pain; Chronic Sinusitis; Depression; Generalized Anxiety Disorder (GAD): Personality Disorder; and Posttraumatic Stress Disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), with the following additional limitations: Due to moderate limitations in social functioning, the claimant is limited to frequent interaction with coworkers and supervisors, little to no contact with the general public, and infrequent changes in the work environment.
>
> 6. The claimant is capable of performing past relevant work as an Information Processing Engineer, sedentary, skilled (SVP-7) and an IT Consultant, sedentary, skilled (SVP-8).  This work does not

2

require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 4, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 15-23].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.    If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III. **STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

§ 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson,

378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   EVIDENCE

Plaintiff is fifty-two years of age and complains of several ailments including but not limited to depression, anxiety, chest pains, hypertension, chronic fatigue, and arthritis. [Tr. 230-57]. She has bachelor's degree in business administration and worked in that field as a consultant and information processing engineer until February 4, 2010, her alleged onset date. [Tr. 54; 190].

Plaintiff claims that throughout her life she has endured various health problems, with increased symptoms and issues developing in 2009. [Tr. 239-42]. In 2009, Plaintiff resided in Nashville, Tennessee and was employed at Bridgestone as a Business Systems Consultant. [Tr. 281]. During that time, Plaintiff states that she experienced her first panic attack and went to the emergency room on October 28, 2009 complaining of chest pains. [Tr. 242; 331-32]. A stress test was taken at that time and the results were negative for ischemic changes. [Tr. 331-32]. Dr. Timothy Kreth noted that Plaintiff had no history of cardiac episodes but was positive for hypertension. [Id.].

The Plaintiff returned to work but reports a second trip to the emergency room only two weeks later due to what she believed was a heart attack. [Tr. 242]. She states that her chest exam was negative for a heart attack and she was released after taking several aspirin. Id.

6

Plaintiff continued to follow up with Dr. Kreth at Centennial Heart Cardiovascular Consultants and Dr. Lee and Dr. Blount at Tennessee Heart and Vascular Institute over the next few months. [Tr. 242-43; 328-39]. A cardiac report dated January 27, 2010 resulted in a normal exam. [Tr. 334-38]. Plaintiff attempted to return to work on February 8, 2010 but left due to an alleged headache, numbness of her hands, blurred vision, loss of memory, and inability to speak. [Tr. 243]. She reports that she was placed on Family Medical Leave Act and never returned to work. [Id.]

Plaintiff filed her Title II and Title XVIII application on June 28, 2010. [Tr. 188-89]. On October 22, 2010, Dr. Stephen Cartwright performed a psychological evaluation and found that Plaintiff suffered from major depressive and anxiety disorders. [Tr. 343-47]. Due to her psychological symptoms, Plaintiff began therapy with Hope Evans, a licensed clinical social worker ("LCSW"), at Chota Community Health Services in November 2010 and continued through November 2011. [Tr. 582-601].

On November 1, 2010, Dr. Jeffrey Wright conducted a psychiatric review and found that the Plaintiff had major depressive and anxiety disorders. [Tr. 358-76]. However, he noted that Plaintiff had no restrictions on daily living, moderate difficulty with social functions, no difficulty maintaining concentration, pace, or persistence, and no episodes of decompensation. [Tr. 368]. Dr. Wright further noted that Plaintiff's psychological impairments did not satisfy the Listings and that she had the ability to "complete a normal work week with acceptable performance and productivity for . . . tasks under normal supervision." [Tr. 369-74]. Dr. George Davis performed another psychiatric review on March 31, 2011 and concurred with all of Dr. Wright's findings. [Tr. 382-98].

Dr. Jeffrey Summers submitted a disability determination on April 26, 2011. [Tr. 404-

7

406].  Dr. Summers noted Plaintiff's history of chest pains, hypertension, anxiety, and depression, and found that Plaintiff's "condition appears to be stable with medical management." [Tr. 406].  In summation, Dr. Summers stated that: "I would place no specific long-term work related restrictions on Mrs. Walsh." Id.  On May 3, 2011, Dr. Carol Lemeh performed a physical assessment and noted that Plaintiff's severity of symptoms "was not entirely credible." [Tr. 422].

Ms. Evans submitted a Medical Source Statement on May 15, 2011, diagnosing Plaintiff with major depression, avoidant personality disorder, benign essential hypertension, and occupational problems.  [Tr. 424-28].  When asked if Plaintiff would decompensate or have increased symptoms if placed in a full time employment setting, Ms. Evans answered in the affirmative, noting Plaintiff's frequent panic attacks and fear of increased symptoms brought on by "minor stresses." [Tr. 428 ].  Ms. Evans diagnosed Plaintiff with a current Global Assessment of Functioning ("GAF") of 40 with a poor prognosis.  [Tr. 424-28].  However, by September 19, 2011, Ms. Evans reported a GAF of 60, noting that "[a]ttitude is cooperative," [a]ttention is gained," and "[r]easoning is fair." [Tr. 598].

Plaintiff's initial hearing before ALJ Feibus was held on October 27, 2011.  [Tr. 50].  After Plaintiff's testimony, the ALJ decided to postpone the rest of the hearing in order to have Plaintiff seen by psychiatrist.  [Tr. 71-75].  On February 10, 2012, Dr. Randall May completed a psychiatric evaluation and found that Plaintiff had social anxiety disorder, histrionic personality traits, and hypertension.  [Tr. 521-29].  Dr. May diagnosed Plaintiff's GAF at 43 but noted that her impairments did not impact her ability to understand, remember, and carry out instructions. [Tr. 522-29].  Dr. May found that the Plaintiff's social anxiety mildly affected her ability to interact with the public and co-workers and moderately impacted her ability to interact with supervisors and respond appropriately to work place changes and situations.  [Tr. 523].  Dr. May

8

concluded that "[t]he patient currently seems to be limiting treatment options and limiting her ability to be in a workplace setting. I certainly think the patient could come further with both treatment and potential progress with some adaptability to changes in both psychotropic medications and/or psychiatric interventions." [Tr. 529].

At the supplemental hearing on May 17, 2012, Dr. Sweeney testified that the Plaintiff had "an affective disorder; . . . anxiety, post-traumatic; social anxiety; and panic attacks." [Tr. 35]. However, Dr. Sweeney found that none of these impairments satisfied the listed impairments ("the Listings") in C.F.R. § 404, Subpart P, Appendix 1. [Id.]. Dr. Sweeney ultimately concluded that:

> I do not believe [Plaintiff] has any limitations as far as her understanding and memory. She definitely can do skilled work. As far as concentration, persistence, and pace, I believe she can work an eight-hour day with the customary breaks every two hours. Socially, I believe she cannot work with the public, but she could have frequent contact with coworkers and supervisors.

[Tr. 36].

## V.    POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ failed to acknowledge significant evidence regarding Plaintiff's alleged disability. [Doc. 17 at 8]. Specifically, Plaintiff alleges that the ALJ gave great weight to evidence that supported his determination of "not disabled" and did not properly consider Ms. Evans's diagnosis. [Doc. 17 at 8-9]. The Plaintiff contends that by "selectively ignoring evidence supportive of disability," the ALJ's opinion was not based on substantial evidence. Id.

The Plaintiff further argues that Ms. Evans's medical records should be given significant weight. [Doc. 17 at 9-12]. The Plaintiff believes that the ALJ's determination that Ms. Evans's

9

diagnosis is "grossly inconsistent" with the Plaintiff's medical history and physician reports is flawed and that the other physicians' opinions "were not based on Ms. Walsh's complete medical records." [Doc. 17 at 11-12].   Therefore, the Plaintiff concludes that the ALJ's opinion was not based on substantial evidence and should be reversed and remanded.  [Doc. 17 at 12].

The Defendant responds by arguing that the ALJ properly and explicitly considered Ms. Evans's diagnosis.  [Doc. 19 at 4].  The Defendant argues that the ALJ "provided good reasons supported by the record for giving [Ms. Evans] little weight.  Id.  The Defendant contends that the ALJ properly gave greater weight to the Plaintiff's treating and examining physicians because Ms. Evans's is not an acceptable medical source.  [Doc. 19 at 6-9].  Therefore, the Defendant argues that the ALJ did not owe her diagnosis great deference, and further, the ALJ correctly found her records to be inconsistent with Plaintiff's history and medical reports. [Doc. 19 at 6-10].  The Defendant concludes that there is substantial evidence to support the ALJ's decision to give Ms. Evans's opinion little weight and to find that the Plaintiff is not disabled. [Doc. 19 at 10].

## VI.     ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A.     Whether the ALJ Properly Considered the Medical Evidence

The Court finds that the ALJ properly considered the medical evidence and based his opinion on substantial evidence.  The Plaintiff argues that that the ALJ ignored evidence from Ms. Evans that supports a finding of disability. [Doc. 17 at 8-9].  Specifically, the Plaintiff asserts that the ALJ based his opinion on medical evidence that tended to support his conclusion that Plaintiff is not disabled, while ignoring pertinent medical evidence proving otherwise.  Id. The Court disagrees.

Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with the any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. Id. at § 404.1527(c). If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070

11

(6th Cir. 1992) (citing <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).

Plaintiff is correct in citing to <u>Claiborne-Hughes Health Ctr. v. Sebelius</u>. [<u>See</u> Doc. 17 at 8]. The ALJ must indeed consider "whatever in the record fairly detracts from the weight of the evidence below." 609 F.3d 839, 843-44 (6th Cir. 2010) (citing <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)). However, the Sixth Circuit went on to explain that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" <u>Id</u>. at 843-44 (quoting <u>Allentown Mack Sales & Serv., Inc. v. NLRB</u>, 522 U.S. 359, 377 (1998) (emphasis in the original)).

The Court finds that the ALJ properly evaluated the record as a whole in determining whether Plaintiff is disabled. Although the Plaintiff did not proffer a disability analysis from a treating physician, a number of physicians and psychiatrists submitted disability determinations based on her medical history and diagnostic sessions with the Plaintiff. The ALJ considered these reports in turn and relied on these medical opinions when making his disability determination. He relied on Dr. Lemeh and Dr. Wright's opinions heavily, gave great weight to Dr. Sweeney's testimony, and significant weight to Drs. Summers, Cartwright, and May. [Tr. 21-22].

Each of these doctors submitted reports with similar diagnoses. Dr. Cartwright diagnosed the Plaintiff with moderate depression but found that this impairment did not affect her ability to understand, remember, or perform work functions. [Tr. 349-50]. Dr. Wright determined that the Plaintiff's major depressive and anxiety disorders did not restrict her ability to work and that she was not significantly limited in performing most work related activities. [Tr. 372-74]. Dr. Davis

concurred wholly in this opinion. [Tr. 382-99]. Dr. Summers established that Plaintiff's physical condition was stable and that she did not require any long-term work restrictions. [Tr. 406]. Dr. Lemeh found that the severity of Plaintiff's self-reported symptoms were "not entirely credible." [Tr. at 422]. Dr. May believed that Plaintiff was limiting her own workplace activity and could make progress by seeking psychological and drug treatment. [Tr. at 528]. Dr. Sweeney testified that Plaintiff's impairments did not meet the Listings and that she "can definitely do skilled work." [Tr. at 35-36].

The ALJ properly weighed this evidence based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). The ALJ did not find any of these opinions warranting controlling weight as a treating physician, but instead apportioned weight based on consistency, supportability, and credibility. [See Tr. 22] (noting that Drs. Summers, Cartwright, and May were given significant weight because they are "highly qualified professionals," "had the opportunity to observe, interview, and examine the [Plaintiff]," and their opinions were "consistent with their own observations" and the record as a whole, and Dr. Lemeh and Dr. Wright's diagnoses were "consistent with the opinions of the independent medical and psychological consultants . . . as well as Dr. Sweeney, Ph.D.").

The ALJ specifically gave proper weight to Dr. Sweeney as a non-examining source. 20 C.F.R. § 404.1527(e) explains that the ALJ's analysis of any non-examining medical source will be considered under the same rules in paragraphs (a) through (d) of that section. The ALJ considered Dr. Sweeney's testimony in conjunction with all other medical opinions, Plaintiff's self-reports, and the medical record as a whole. He assigned her testimony "great weight" "due to her expertise and review of the [Plaintiff's] medical and psychological records[,]" [Tr. 22], and he found her opinion to be consistent with the record and other physician reports. Based on

13

the application of the factors in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6), the ALJ's reliance on Dr. Sweeney was based on substantial evidence.

Not only did the ALJ properly consider each medical opinion, he also examined all relevant evidence that did not support a finding of disability. He weighed the Plaintiff's testimony, her adult function reports, and Ms. Evans's diagnosis in determining that Plaintiff was not disabled. [Tr. 18-23]. The ALJ specifically gave significant attention to Ms. Evans's analysis. Although the ALJ noted that Ms. Evans was "not considered an acceptable medical source under SSR 06-03p" he went on to explain that her "opinion can be considered evidence and given weight if it is supported by the medical evidence of record." However, he declined to assign her opinion substantial weight because it was "grossly inconsistent with the [Plaintiff's] documented history[.]" [Tr. 22].

The Plaintiff alleges that the ALJ failed to consider the Plaintiff's GAF scores; specifically claiming that the ALJ erred in finding that Ms. Evans's analysis was inconsistent with Dr. May's diagnosis. [See Doc. 17 at 11-12]. However, the ALJ specifically addressed Plaintiff's GAF scores even though he did not include Dr. May's diagnosed score of 43 under his RFC analysis. [See Tr. 20]. The ALJ noted that Ms. Evans diagnosed Plaintiff with a GAF of 40 in her medical source statement of May 2011. [Id.]. In determining the severity of Plaintiff's impairments, the ALJ included Ms. Evans's diagnosed GAF of 61 less than six months later, which he noted was "suggestive of mild symptoms in social or occupational functioning" and found her medical records from April 2011 through January 2012 to "consistently indicate improvement[.]" [Tr. 17]. It is inconsequential that the ALJ failed to include Dr. May's GAF score in the RFC analysis. The ALJ fully considered the totality of Dr. May's opinion and gave it significant weight based on his qualifications and his opinion's consistency with Plaintiff's

14

medical records and the diagnostic findings of other physicians. [Tr. 20-22]. The ALJ considered Plaintiff's GAF scores and weighed that evidence with the record as a whole, finding Ms. Evans's diagnosis of May 2011 inconsistent with the other relevant medical evidence. Such a finding is based on substantial evidence.

The Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The ALJ properly considered all the relevant medical evidence and gave weight to the medical opinions most consistent with the record and supported by the evidence. The ALJ further considered the portions of the record that did not support his opinion and determined, based on the totality of the evidence, that Plaintiff was not disabled.

**B. Acceptable Medical Evidence**

The Court finds that the ALJ properly considered Ms. Evans's treatment records and diagnosis. Under the Social Security regulations, licensed clinical social workers are not considered "acceptable medical sources" that can provide evidence to establish the existence of a medically determinable impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a); Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 119 (6th Cir. 2010) (stating that "social workers are not acceptable medical sources."). Pursuant to 20 C.F.R. § 404.1513(a), an acceptable medical source includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. Because licensed clinical social workers are not included as an acceptable medical source, they are not entitled to controlling weight. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (explaining that "[m]edical opinions are statements from physicians and psychologists or other *acceptable* medical sources . . .") (emphasis added).

However, as "other medical sources," a licensed clinical social worker's opinion is

"important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *3 (Aug. 9, 2006). Social Security Ruling 06-03p states that the same factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) "can be applied" in determining the weight to be afforded to findings by other sources. Id. at *3-4. These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. Id. at *4-5. Yet even though an ALJ should consider the above factors, Social Security Ruling 06-03p states that only "acceptable medical sources" can establish a medically determinable impairment, be considered treating sources entitled to controlling weight, and give medical opinions. Id. at *2.

The Court finds that the ALJ properly considered Ms. Evans's opinion. Although not an acceptable medical source entitled to controlling weight, Ms. Evans is nonetheless an important source of medical information based on the factors set forth above. See 20 C.F.R. §§ 404.1527(c) and 416.927(c); SSR 06-03p, 2006 WL 2329939, at *4-5 (2006). The Plaintiff had several sessions with Ms. Evans over the course of many months and Ms. Evans is a trained clinical social worker. However, the ALJ granted her diagnosis little weight because he found Ms. Evans's diagnosis to be inconsistent with the record as a whole. [See Tr. 22-23]. The ALJ found that Ms. Evans's assessments were:

> grossly inconsistent with the [Plaintiff's] documented history of mental status examination that consistently showed little to no function limitations . . . inconsistent with records that showed the

effectiveness of prescribed medications . . . and inconsistent with the professional opinions of the independent psychological consultants and the testifying psychological expert who all indicated no limitations to activities of daily living or concentration, persistence, or pace."

Id.

Regardless of the fact that Ms. Evans is not an acceptable medical source warranting controlling weight, the ALJ considered her opinion fully and found it inconsistent with the record as a whole. The ALJ's analysis was reasonable, thoroughly explained, and properly considered based on the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) and SSR 06-03p, 2006 WL 2329939, at *4-5. The determination to afford Ms. Evans's diagnosis little weight is based on substantial evidence.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 16]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **GRANTED**.

Respectfully submitted,


_____s/ C. Clifford Shirley, Jr._
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).